1843.

BANK OF
AMERICA
*v.*
POLLOCK.

---

THE PRESIDENT, DIRECTORS and COMPANY of the BANK OF AMERICA *v.* POLLOCK and others.

---

Where a bill charges that shares of stock have, by fraudulent conduct of one person, got into the possession of two, the latter may be proceeded against in one suit, although they each hold a distinct number of the shares'; and it is also right to make the wrong-doing person a party.

Where a clerk in a bank improperly obtained the check of customers and dishonestly drew out money, knowing it caused an overdrawing and bought stocks and absconded: *Held*, that these customers were not necessary parties in a bill filed by the bank to reach the stock.

A clerk of a bank, through fraud using the borrowed check of a firm, whose account (in that way overdrawn) was more particularly under his own supervision, withdrew money from the bank and deposited it to his own account at another bank and bought stock with it and caused such stock to be placed in the name of his sisters without consideration: *Held*, that the sisters were to be construed as trustees for the bank defrauded.

---

THE bill was filed to reach one hundred and forty shares of the capital stock of the Mechanics' Bank in the City of New York.

The complainants, the president, directors and company of the Bank of America, showed by their bill : that Andrew Pollock had been one of their clerks and had previously to his absconding as therein and hereinafter mentioned, been so for about eight years, during a part of which time he acted as one of their bookkeepers, keeping the accounts of some of their dealers and, among others, of those whose surname or firm commenced with J. and among whom was the firm of Jarvis & Scrymser, with whom the said Andrew Pollock

*Jan. 27,*
*1843.*

*Pleading.*
*Parties.*
*Fraud.*
*Trustee.*

was on terms of great intimacy and confidence. Also that the said Andrew Pollock had two maiden sisters residing in the city of New York, namely, the defendants Sarah B. Pollock and Susan E. Pollock, each of whom owned a considerable amount of personal estate and which was invested, in part, in several of the monied institutions of the said city of New York. That they were informed and believed that the said Andrew Pollock acted as the agent of his said sisters in collecting, from time to time, their dividends, and kept their certificates of stock in a small trunk deposited and kept by him in the vault belonging to the banking house of the complainants. Also, that they were informed by the said Jarvis & Scrymser that the said Andrew Pollock represented to them that he often had sums of money in his hands belonging to his said sisters, and that he was desirous of gaining an interest thereon ; and proposed to them that he would, from time to time, make deposits with the complainants to the credit of the said Jarvis & Scrymser ; and that, when he wanted the same, they should repay the same with interest ; and that, at other times, the said Andrew Pollock was in the habit of borrowing from them, the said Jarvis & Scrymser, their checks drawn on the complainants, under the assurance that he would provide for them. That since the absconding of the said Andrew Pollock and on a diligent and thorough examination of the account of the said Jarvis & Scrymser with the complainants, as kept by the said Andrew Pollock in the ledger of the complainants, they found divers sums falsely credited to the said Jarvis & Scrymser in the said Pollock's handwriting, without any transactions or deposits whatever having been made by the said Jarvis & Scrymser to correspond with or justify the said false credits, but that the checks of the said Jarvis & Scrymser on the complainants to the extent of the said false credits were duly drawn by them and paid by the complainants, which said false credits were to the amounts and under the dates set forth in their bill and made an aggregate sum of eighteen thousand dollars. Also, that the said Andrew Pollock borrowed or received from the said Jarvis & Scrymser eight checks, drawn by them on the complainants which the said complainants duly paid—each being for the sum of eight

thousand dollars; and which were all paid in the year one thousand eight hundred and forty-one (and in the months of June, July, August, September, October and November) and the entries or debits of which said eight checks, as the complainants had discovered since the absconding of the said Andrew Pollock and as they charged the fact so to be, he falsely and fraudulently erased from the cash book of the complainants with so much care and skill as to avoid detection, except upon a very close and critical examination and inspection; and which said checks, as the said bill charged, the said Andrew Pollock clandestinely and fraudulently returned to the said Jarvis & Scrymser without the knowledge or consent of the complainants, thereby depriving them of the same as vouchers and debits against the said firm or as the means of detecting the said fraudulent erasures from the said books of the complainants and by means of all which premises making the defalcation to the complainants caused by the frauds and depredations of the said Andrew Pollock amount to the aggregate sum of twenty-six thousand dollars, which corresponded with the amount stated by him in a letter which, after he had absconded, he addressed to his sister the defendant Sarah B. or to his brother. Also the complainants charged that the said Sarah B. and Susan E. Pollock never did, in a single instance, transfer or directly or indirectly ever authorize the transfer or give or execute any power of attorney for the transfer of any of their own stocks or other securities held in various of the monied institutions in the city of New York. That, on the twenty-ninth day of June one thousand eight hundred and forty-two, the said Andrew Pollock had in his possession a check drawn by Jarvis & Scrymser on the complainants for three thousand dollars, which was paid by them—and which the complainants now charged that the said Andrew Pollock obtained from the said firm by fraud and which check he deposited in the National Bank to his own credit. That the said Andrew Pollock, about the time last aforesaid, purchased of Van Vleck, brothers, one hundred and forty shares of the capital stock of the defendants the Mechanics' Bank in the city of New York, which were transferred directly to the said Sarah B. Pollock and Susan E.

Pollock in equal portions, *i. e.* seventy shares to the one and the same number to the other. That the said Andrew Pollock paid the same by delivering his check on the National Bank, which was duly paid. That he had no funds in the said National Bank at the time of effecting the purchase of the said stock and of the payment of the said check except the check hereinbefore mentioned drawn by Jarvis & Scrymser on the complainants and afterwards paid by them—and which the complainants charged that he, the said Andrew Pollock, had deposited to his credit at the National Bank for the express purpose of creating a fund therein upon which he might draw for the payment of the price of the said stock. They charged that the said shares of stock were purchased and paid for with funds of the complainants fraudulently abstracted and taken from them by the said Andrew; and they insisted that they had a right to follow the said one hundred and forty shares as their own and that the said defendants, Sarah B. Pollock and Susan E. Pollock, held the same in trust for the complainants. That the said Andrew Pollock, having committed the frauds and depredations aforesaid, absconded, and at Boston took passage for England. The complainants charged, on information, that the said Andrew Pollock, while in Boston, addressed a letter to his sister the said Sarah B. Pollock, in which he stated to her, in substance, that all her stocks and those of her sister, the said Susan E. Pollock, were standing in their respective names or still belonging to them, except thirty-five shares belonging to Sarah B. which, he stated, he had improperly made use of and cautioned her not to submit to the transfer thereof—and of which letter the complainants prayed a discovery. *Prayer*, that the complainants might be deemed to be entitled to the said one hundred and forty shares of stock ; and, for further relief, and also for an injunction. Parties, the Mechanics Bank, Andrew Pollock, Sarah B. Pollock and Susan E. Pollock.

Each defendant interposed a demurrer on the grounds of misjoinder of parties, want of equity, and for multifariousness.

Mr. *Jonathan Miller* in support of the demurrers.

Mr. *Bidwell*, contra.

THE VICE-CHANCELLOR :—The objection of misjoinder of parties and that the defendants Sarah Pollock and Susan Pollock should be proceeded against separately is not well taken.   The case of *Fellows* v. *Fellows*, 4 Cowen's R. 682, is a decisive authority to show that, although they hold distinct moieties of the stock in controversy, they may, under such circumstances as exist here, be proceeded against jointly.   Andrew Pollock is, for form sake, a proper party and the two sisters might have objected if he had not been made a defendant : on the ground, if on no other, that if they lose the stock they ought to have a decree over against him. The Mechanics' Bank are properly made defendants for the sake of the injunction and a decree directing the stock to be transferred on their books : *Lloyd* v. *Loaring*, 6 Ves. 771. I consider that Jarvis & Scrymser are not necessary parties to this suit.   They have no concern in the alleged equity of the complainants to follow the stock.   If they are liable to the complainants for money as upon an overdrawing by means of the checks, the complainants must pursue their remedy at law against them; and this they may or may not do as they shall think proper, whether they succeed or not in this suit *in rem* against the stock.   If successful, the only effect will be to lessen their demand so much against Jarvis & Scrymser.

Then, as to the merits between the complainants and the Misses Pollock.   According to the statements in the bill, the latter have lost nothing.   They are but volunteers, having paid nothing for the shares of stock in question.   The former shares which they owned still belong to them.   A transfer under a forged power did not pass the title from them and they have only to look after and reclaim their own property.   But, still, if the complainants have no right in equity to follow the property, this court will not help them to wrest it from the hands of the defendants, although they be but nominal owners and without value paid for it.   The bill shows that the money of the complainants tortiously taken from them has been applied to replace money of the National Bank which was used to pay for the purchase of the spe-

cific shares of stock in question ; and upon this it makes but a case of constructive trust in equity in favor of the complainants to have the' benefit of the property, in which their money, although not directly, yet indirectly, has been invested and to which no other person, except mere volunteers, have acquired any title or interest.

I consider that this case falls within the principle laid down by Mr. Justice Story in 2 Com. Eq. 503, § 1258. The identity of the property is shown and traced ; and, under such circumstances, it can be laid hold of by a court of equity and distinguished from the property of all other persons and handed over to the equitable and rightful owners : *Thompson* v. *Perkins*, 3 Mason, 232, and cases there cited.

The demurrer must be overruled, with costs ; and the defendants must answer on the usual terms.