[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 238 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 239 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 240 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 241 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 243 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 244 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 245 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 246 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 248 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 249 
The important question in the cause is, whether the conveyance by Saxton to the receiver, on the 5th of January, 1839, divested the grantor of his interest in the real estate in question, so that no lien was acquired by the plaintiffs under their judgment subsequently docketed.
Were it not for the elaborate opinion of the learned judge, who delivered the judgment of the supreme court, I should deem the interrogatory satisfactorily answered, in the affirmative, by the preceding statement of facts.
The statute declares, "that a judgment of a court of record "shall bind the real estate of the debtor, which he may have *Page 250 
"at the time of the docketing of the judgment." In this case, the assignment of Saxton, the debtor, of all his real estate, was made to the receiver, on the 5th of January, 1839, and the question is, what he had remaining to subject to a lien of the plaintiffs' judgment, obtained two days afterwards.
If the assignment and trust deed to Crane and Crosby were operative, the legal title was in them as assignees. If fraudulent, and consequently void, as the plaintiffs assume, and as the court of chancery had decreed, when they directed the appointment of a receiver, then the conveyance by Saxton to the latter, under the order of the court, divested him of all his property, (except that exempted from execution,) the premises in question inclusive.
The power of the court to make the order of November, 1838, is not questioned. The supreme court admit that the conveyance to the receiver is in form, sufficient to transfer the title, and that in terms, it is in conformity with the order. It is said that Lester was a common law receiver. But such a receiver may be, and in this case was, specially authorized to receive what the judgment debtor was directed to transfer and assign. The subject of the transfer was "all the property, rents and real "estate" of Saxton, as provided by the decree, and enumerated in the assignment. We are told "that the effect of the words "assign and transfer, depends upon the intent; and the intent "was, to convey to the receiver just interest enough in the property "to enable him to protect it, and receive the rents and "profits." This is the view taken by the court below. We are not informed what would be the nature of that partial interest, which, when conveyed, would enable the receiver to acquire possession of and protect the real estate, and yet leave a residuum in the grantor upon which the judgment of the plaintiff would be a lien. The adjudication of the court, and the intention of the chancellor, is to be ascertained from the record. And on examining the decree, we find no allusion to an undefined interest, which is not a legal one, but which will, notwithstanding, give the possession of the lands, and a title to receive the profits, and guard *Page 251 
both against all persons whatsoever; but it is there "adjudged "and decreed that the defendant Saxton shall assign, transfer "and set over, all the things in action, equitable interests,rents "and real estate, which were in his possession, custody, or control, "at the time of the service of the injunction." As against the complainants in that suit, the debtor had neither parted with the possession, title or control, of any of his property by the fraudulent assignment. The decree places all of it, things in action and real estate, upon the same footing, as to the quantity of interest to be conveyed; and a limitation as to one in this respect, is applicable to both, or neither. The assignees are also required to convey to the same person, obviously manifesting the intention of the court, that the receiver should be clothed, not only with the substantial, but also with the formal title, to the entire property.
If this is the true construction of the decree, it disposes of this controversy. The lien of the plaintiffs' judgment never attached upon the premises; the subsequent sale was inoperative, and conferred no title upon them as purchasers. To this result, it is immaterial whether the object of the assignment to the receiver was merely to protect the property and collect the rents, since the court has determined that the transfer of thewhole interest was necessary to enable the officer to discharge those duties. That decision cannot be reviewed here, and is conclusive in this case. Nor is it material whether chancery could decree a satisfaction of the demands of judgment creditors out of the real estate. If the chancellor, in this particular, exceeded his jurisdiction, the sale might be void; but the title of the receiver under the assignment would not be affected. The case made by the plaintiffs, assumes the validity of that transfer; and predicates their title to relief, upon the sole ground of a legal lien, and sale by virtue of their judgment. The difference between the parties to this suit, is not as to the jurisdiction of chancery, to make the order of November, 1838, but as to its construction. The bill, in its frame and parties, can be sustained upon no other ground. *Page 252 
But in the second place, the court of chancery had authority, under the circumstances of this case, to decree a sale of the real estate. The provisions of 2 R.S. 174, §§ 38, 39, apply to creditors' bills, strictly so called, where the only claim to relief is, that the remedy of the creditor is exhausted at law. In those cases, an execution must be returned unsatisfied, and this alone confers jurisdiction upon the court to compel a discovery, and afford the relief mentioned in the 39th section. The common law powers of the court in reference to fraudulent trusts and conveyances, are not touched by these provisions. Fraud and trust were familiar heads of equity jurisdiction, independent of the statute. The creditor, invoking the aid of the court, must establish his title to its interposition, by alleging a lien, or quasi lien, upon the real or personal property which was the subject of the trust; and he would then be entitled to relief, notwithstanding he had a remedy at law, by levy and sale upon execution. In all cases of fraudulent trusts, the court may, in its discretion, direct a sale by a master, and compel the debtor and trustee to unite in the conveyance to the purchaser; or it may order an assignment to a receiver, as was done in this case, to the end that the property may be disposed of under the special instructions of the chancellor; or, the fraudulent conveyance may be annulled, and the creditor permitted to proceed to a sale upon his execution. (9 Wend. 561; 3 John. Ch. Rep. 507; 2 Atk. 477; 3 Id. 357; 1 Paige, 642; 3 Id. 235, 237.)
The authorities cited by the plaintiffs assert, or imply, these principles. Indeed, their counsel was understood as conceding, substantially, the jurisdiction of the court by the common law; but claimed that it had been limited to sales of personal property, in satisfaction of the judgment, in all cases by statute. In this, I think he is mistaken; and in Leroy v.Rogers, (3 Paige, 237,) the chancellor seems to have been of the same opinion.
It is said that the defendant is estopped from alleging that the plaintiffs' judgment is not a lien, because he asserted the contrary before his purchase at the receiver's sale. The defendant, in his letter to the receiver, of the 4th of April, 1840, insisted *Page 253 
that the real estate would be worth nothing above the judgments that were liens upon it. And he probably expressed the same opinion to the receiver at the sale; but not in the presence of the purchasers. I assume, however, that he informed the receiver, that this judgment was a lien upon the premises. The complainants do not allege that he was influenced by improper motives in making the declaration, or that it was not at the time the opinion honestly entertained by him. The estoppel, then, consists in the expression of an opinion, upon a question which the complainants will claim, is not free from difficulty, and in subsequently changing it. The opinion not being declared to the complainants, who do not claim in their bill that they did, or omitted any thing upon the faith of it; or, indeed, that they knew it was entertained by any one, until subsequent to the disposition of the property in question.
An honest, though mistaken opinion of the law, would be a singular estoppel. Even a lawyer may increase his knowledge as to his legal rights, without forfeiting his estate on account of his former ignorance.
The decree should be reversed, with costs in the supreme court.