Robertson, Ch. J.
The only grounds upon which the defendants resist the payment to the plaintiffs of the debt due by them for money lent, (Com. Bank of Albany v. Hughes, 17 Wend. 94; 2 Seld. 412,) which is termed d deposit with them as a bank, are three-fold.
Eirst. That such moneys, so deposited or lent, are still the property of the firm of Lanes, Boyce & Oo.; and the defend *148 ants have a right to set off the debt due to them from that firm, against liability for such moneys.
Secondly. That the defendants are judgment creditors of Lanes, Boyce & Co. who, by having exhausted their remedy by execution, are in a position to attack the bona fides of the assignment by that firm to the plaintiffs, and are entitled to have, it avoided, by way of affirmative relief) as claimed in their answer, in order to reach the property fraudulently assigned, its proceeds, either in the hands of the assignees, or in the shape of the debt from the defendants themselves.
Thirdly. That they are bound to respond to the sheriff for such moneys, under the attachment issued in their favor against the property of Lanes, Boyce & Co. and not to the plaintiffs.
These three grounds must be viewed separately, in considering the rights of the parties. It is also not to be lost sight of, that the action is not for moneys having an earmark, which could not be appropriated without a conversion, but simply for money lent. It is true that if such moneys had been the fruit of a felonious or fraudulent appropriation of any person’s property,' the true owner might follow such proceeds into the hands of any one into which they might come, (Bank of America v. Pollock, 4 Edw. 215,) thus making the party by whom such property was so appropriated, in fact, the agent of the original owner. The moneys in question, however, could in no sense, after the assignment of “Lanes, Boyce & Co.” be termed their property, except so far as by law they plight be pursued and reached by their creditors.
The answer in this case contains the whole of all the affidavits on which the attachment under which the defendants claim was issued, with all their allegations of mere probative facts, averring that all such allegations are true. After setting forth the issuing of. such attachment, and its service on the defendants, it further alleges other matters to show that the assignment by Lanes, Boyce & Co. was fraudulent. But it only claims that the defendants have a right to apply the balance of the moneys deposited by the plaintiffs with them as part payment of their judgment against the members of the *149 firm of Lanes, Boyce & Co. and to apply such judgment by way of off-set or counter-claim.
In reference to the first of the modes in which the defendants so seek to take advantage of their claim against Lanes, Boyce & Co. it is clear that they could not set off their claim against that of the plaintiffs in this action. They could only make that set-off where such firm had a right to the moneys claimed. The assignment cut off all such right, until it was adjudged to be void as against creditors. For that purpose certain steps must be taken by the latter, such as obtaining judgment and exhausting all ordinary remedies by execution, before they could be placed in a situation to attach such assignment and remove it as a barrier to reaching the proceeds of the assigned estate in the hands of assignees.
The second of such modes presents a more embarrassing question. The Code authorizes a defendant to set up new matter constituting a counter-claim connected with the subject of the action. (§ 150, subd. 1.) Such counter-claim has been held to be more broad and comprehensive than a set-off or recoupment, while including both. (Vassear v. Livingston, 3 Kernan, 256. Pattison v. Richards, 22 Barb. 146.) It has been held in this court to include every relief to which a defendant would be entitled in a separate action at law or in equity, or in a cross action. (Gleason v. Moen, 2 Duer, 642.) It is also fully settled that a defense purely equitable may be set up against a claim strictly legal, (Foot v. Sprague, 12 How. 355; Hunt v. Farmers’ Loan and Trust Co., 8 id. 418,) and cannot be taken advantage of in any other way. (Id.) Such defenses include every thing for which relief must formerly have been sought in a court of equity. (Dobsen v. Pearce, 2 Kernan, 156.) And although counter-claims, which are not merely defenses, but admit of affirmative relief beyond dismissing the plaintiffs’ complaint, are not lost by not being set up, nothing prevents their being set up if connected with the subject of the action. The Code expressly provides for giving by judgment to the defendant, “any affirmative relief to which he may be entitled.” {Code, § 274, subd. 2.) This *150 undoubtedly was meant to provide, in case of a counter-claim, for affirmative relief beyond dismissing the plaintiffs' complaint.
Fraud in the assignment to the plaintiffs, whereby, upon an assault thereupon by creditors of the assignors, who had exhausted their remedy at law, they would hold the assigned property in trust for such creditors, clearly constituted a cause of action connected with the subject of the present one, which consisted of a liability to refund proceeds of such fraudulently assigned property lent to the defendants. There would be no obstacle to the commencement by the latter, as such creditors, of an action to set aside such assignment, and have all the proceeds of the assigned property in the hands of the plaintiffs, including, of course, the moneys deposited with the former, applied to' the payment of their claim, and incidentally to enjoin them from prosecuting such an action as the present. The Code evidently intended to prevent circuity of action, by allowing defendants to resist an action brought for moneys, which they might substantially recover back in another form. It uses the most general terms when it merely requires the cause of action in a counter-claim to be “ connected with the subject, of the action.” Such a phrase, in order to prevent multiplicity of litigation, should be liberally construed. (See McNamara v. McNamara, 9 Abb. 18.)
Some little difficulty arises upon the question whether the defendants have, by a proper demand of affirmative relief, irrevocably elected to pursue their remedy in this action, by setting aside the assignment in question, and procuring a judgment to that effect, which shall also direct the application of the moneys sued for in satisfaction pro tanto of their claim. Of course, where affirmative relief as a counter-claim is sought, although the Code does not expressly require that it'should be asked for, it would seem more proper that it should be so in some way (Bridge v. Payson, 5 Sandf. 210,) but how far that which is sought must be specified in detail, is not so clear. If the matter, which constituted such counter-claim, were the subject of a cross action, as well as of such counter *151 claim, on a motion to drive the defendants to their election of remedies, before taking issue on a trial, the character of the relief sought in the action in which it was set up as a defense might be very material. (Farmers’ Loan Co. v. Hunt, 1 Code Rep. N. S. 1.) The positive rule of the Code in regard to complaints when answered, (§ 275; Marquat v. Marquat, 2 Kernan, 336,) might perhaps be applied to answers setting up new matter upon which to found affirmative relief, where they had been replied to. But there is no reply in this case. The attachment could never be any thing inore than a defense, the counter-claim rests on the judgment alone. Perhaps, as the defendants may have a right to have the assignment in question declared void, upon the facts stated in their answer, they may avail themselves of those facts as creating an equity to have the moneys in their hands applied in satisfaction of their claim, and thus create an equitable defense out of the same, which would not need to be tried by a jury. At all events, there was no demurrer to the answer, nor was any specific objection taken on the trial, to the want of a proper demand of affirmative relief, and the defect must therefore be considered as cured.
The great objection to the plaintiffs’ right of recovery is that all the facts stated as a counter-claim in the answer, were neither demurred to nor controverted, and were consequently ■admitted, and no issue of fact was raised upon them to be tried, and the defendants became entitled to all the relief which such facts required should be given. The judgment itself is incomplete without some disposition of the issue raised by the statement of such counter-claim in the answer, and either that must be corrected or a new trial had to dispose of it.
But for the purpose of determining whether any jury trial is necessary, it will be proper to examine the nature of the defense.
So far as the right of the sheriff to' prosecute for the debt due the plaintiffs is concerned, it must depend entirely on the statutory provisions of the Code, (§§ 227 to 243,) respecting attachments. Those provisions are very precise and special, *152 but are not to be extended beyond the evil and remedy pointed out by it, by construction. An attachment is evidently a means of seizing and impounding, for the purpose of finally satisfying the judgment of the plaintiff when obtained, certain described property of the debtor. The warrant issued is to be, in general terms, to attach and safely keep, .enough of the property of the defendant, within his county, to satisfy the plaintiffs’ demand. (§ 231.) The sheriff is required to proceed as required by law in case of absent debtors, and to keep the property seized by him and the proceeds of any sold, to answer the judgment. (§ 232.) He is further authorized, subject to the direction of the court, to collect and receive into his possession all debts, credits and effects of the defendant, and for that purpose to take the necessary legal proceedings, either in his own name or that of the defendants, as may be necessary. (§ 232.) This, so far as such debts, credits or effects are concerned, would make the sheriff their legal trustee or receiver; and as such he is to sue, claiming title through the defendant. The interest of the defendant in the stock of any association or corporation, with any interest or profits thereon, and all other property of his in this state, is also made liable to be levied upon and sold. (§ 234.) Such attachment is to be executed upon such rights or shares by leaving a certified copy of such warrant, with a notice of the property levied on, with the head of such association or its managing agent, and upon debts or other property incapable of manual delivery, by leaving a like copy and notice with the debtor or individual holding such property. (§ 235.) Such officer, debtor or individual is required to furnish the sheriff, on request, with a certificate designating the number of shares of the debtor in the stock of such association and any dividend or incumbrance thereon, or the property held by such association or individual, for the benefit of the defendant, or the debt owing to him. (§ 236.) The sheriff’s power to collect notes and other evidences of debt and' the debts attached under the warrant of attachment, and to prosecute bonds taken by him, is continued until the judgment is paid. (§ 237, subd. 4.) The power of a sheriff in cases of *153 attachment against absent debtors is very nearly similar. (2 R. S. 188, 4th ed.) He is required to attach all personal property, including money and bank notes, and to take into his custody all books of account, vouchers and papers relating to the property, debts, credits and effects of such debtor. (Id. § 7.) He is also authorized to collect, receive and take into his possession the debts, credits and effects of such debtor, and commence such suits and take such legal procedings in the name of such debtor, as may be necessary for that purpose, to be continued by trustees afterwards. (Id. § 8.)
The provisions just recited in regard to attachments in actions and against absent debtors, add to property leviable upon under an execution, debts, credits and effects of the defendant or debtor, provide for the mode of levy by notice to the debtor, and for discovery by him of the amount due, and enable the sheriff or officer to reduce them into possession by actions either in his own name or that of the defendant. The plaintiff is empowered to prosecute the actions so authorized to.be brought by the sheriff in case of attachments against a defendant, upon giving an undertaking to indemnify the sheriff from all damages, costs and expenses on account thereof, (Code, §239,) which undertaking (by the next section) is not to be delivered up to the defendant in case he recover judgment, so that it becomes entirely a personal indemnity to the officer for any liability incurred in such action.
It is very evident that the first of such two last mentioned sections (§239) was intended to be confined to actions brought by the sheriff, under section 232, and probably to those brought in his own name, as the indemnity is against all damages, costs and expenses on account thereof, which he never could incur except in suits brought by himself. The prosecution by the plaintiff, mentioned in such section, was evidently the mere conducting and supervision of the proceedings, not the bringing of a suit in his name, as it is contrasted with such bringing of the suit, and has the alternative of “ under his direction ” added, which alone would not give him power to determine in whose name the suit should be brought. It is clear, therefore, *154 that such actions are only to he brought in the name of the defendant, or the. officer of the law, under section 237, by whomsoever they are to be conducted when brought. The law did not intend the plaintiff in such action to be the party by whom the debts were to be collected, or give him any power or right, except through the sheriff as the officer of the law, to collect and apply the property of the debtor to the satisfaction of his judgment when obtained. In regard to any property of the debtor which the sheriff was by such- statutory provisions authorized to attach, seize, reduce into possession and collect, of course no fraudulent assignment thereof could stand in the way of such attachment, seizure or collection by action or otherwise. The principle settled in the Court of Appeals in Rinchey v. Stryker, (26 How. Pr. 75,) and previously in this court in Thayer v. Willet, (5 Bosw. 344,) goes to that- extent. The only question is whethey in regard to property which never had been owned by the debtor, and debts which never had been due to him, or claims which, even if the attachment had not been issued, never could have been collected by him; and which previously had only been capable of being reached by a judgment creditor’s action, or by a receiver appointed therein, the sheriff virtually takes the place of the creditor whose claim is not yet reduced to judgment, and can proceed to collect such claim by attempting to set aside, as fraudulent, the instrument under which such property was acquired.
It is by no means clear in what form, or on what principle, the proceeds of goods, fraudulently assigned, in the hands of assignees, can be so reached. To reach' dioses in action, not leviable upon at law, an equitable execution might be issued, by a bill in equity, whose lien attached from the time of filing it. (Butler v. Stoddard, 7 Paige, 163.) A bill to remove obstructions to the levy of an execution upon goods liable thereto, it seems, would also relate backwards, and take effect' as a lien from the time of issuing such execution. (Id.) The remedy of a creditor is, however, extended, on certain conditions, to all the property, and things in action, of a debtor, by the Revised Statutes and the Code, (2 B. S. 173, § 28 ; Code, *155 § 297.) The latter, however, requires an action to he brought, when a debt is denied or property is adversely claimed, (§ 299.) But money which is either the proceeds of goods sold by a fraudulent assignee, or has been collected by him from the assignor’s debtor, cannot be said to be the assignor’s property, which it never was, nor was the title to it acquired by such assignment. Even setting aside the assignment as fraudulent, would not make such money the debtor’s property, or entitle him to it. Goods sold by the assignee, or debts discharged by him, before any action to set aside the assignment, cannot be reclaimed by creditors. Until that time, a good title to the former passed by such sale, and the release of the latter was effectual until that time. The right to follow, therefore, the proceeds of such goods or debt while in the assignee’s hands, can only be created by converting him into a trustee thereof for creditors, who intercept such.proceeds before distribution under the assignment. Upon that principle alone, is he to be protected for payments by him in good faith before any action commenced. (Barney v. Griffin, 4 Sandf. Ch. 552. Wakeman v. Grover, 4 Paige, 23. Averill v. Loucks, 6 Barb. 470.) A fraudulent grantee of lands is not accountable for rents and profits received by him before a receiver is appointed. (Robinson v. Stewart, 10 N. Y. Rep. 189.) The earlier cases, (Hendricks v. Robinson, 2 John. Ch. 283; S. C. 17 John. 438; Hadden v. Spader, 20 id. 554; S. C. 5 John. Ch. 280; Bayard v. Hoffman, 4 id. 450; McDermutt v. Strong, Id. 687,) seem to have proceeded upon the principle of converting a fraudulent assignee into a trustee whenever the property assigned was not subject to an execution at law or to be reached in equity, as the debtor’s property, after the exhaustion of the legal remedy. (Donovan v. Finn, Hopk. 59.) The provisions of the Bevised Statutes before mentioned (2 R. S. 173, § 28) in regard to reaching property of judgment debtors, are held only to apply to strict creditors’ bills, based on the exhaustion of the remedy at law, and not to the powers of a court to reach property fraudulently assigned. (Chautauque Co. Bank v. White, 6 N. Y. Rep. 236.) The pursuing creditor *156 does not seem to lose his right of reaching such proceeds by waiting until such conversion by the assignee has taken place. (Knauth v. Bassett, 34 Barb. 31.)
It would be difficult to conceive how a sheriff, or a debtor, could be plaintiff in an action to set aside a fraudulent assignment, or rather to convert the assignee into a trustee for an alleged creditor, in order to reach the proceeds of assigned goods before the creditor has established his claim, when the latter could not do it himself. (Mills v. Block, 30 Barb. 549.) It is true, it has been held that under the Revised Statutes, upon an attachment against an absconding debtor, a creditor could file a bill to remove fraudulent obstructions, but it must be on behalf of all the creditors. (Falconer v. Freeman, 4 Sandf. Ch. 565.) But the provisions of the Code, before referred to, confine the right of the sheriff to the collection of debts due to the defendant also. I do not perceive how, by any artificial reasoning, a debt due to his assignees for the loan of the proceeds of goods sold or moneys collected, can be said or considered to be in any manner a debt due to him, or any part of his credits or effects, until the assignment is set aside or proceedings are taken by some one entitled to set it aside. As to him, such debt belongs to the assignees. The result of permitting the sheriff to commence an action in which he would be obliged to set forth the assignment and its fraud, as the foundation of his claim, since he could not recover the debt upon a mere allegation that it was due to the defendant in the attachment suit, might lead to a long litigation in which all the equities of the assignees would require to be settled, and yet, after all, the plaintiff in such suit might not ultimately recover therein. If goods or debts of the defendant were alone concerned, no such equities need be settled, and the sheriff, after collecting the debts, could return the proceeds to him.
I am aware that in the case of Skinner v. Stuart, (15 Abb. Pr. 391,) it was incidentally stated that upon complying with the terms of section 232, a plaintiff who had obtained an attachment might sue in his own name, but it was not necessary for the decision of that case, and the learned judge who made *157 the remark did not explain what the object of requiring an undertaking to indemnify the sheriff could be, where the latter could not, by any possibility, be damnified. In the more recent case in the Supreme Court of this district, of Kelly v. Lane and others, (N. Y. Transcript, Dec. 27, 1864,) no such doctrine is insisted upon, although it was held, on other grounds, that the sheriff might maintain the suit.
In the case last cited, in which the assignors of the present plaintiffs were defendants, the prevailing opinion seems to disregard the words of the statute, “ debts, credits and effects of the debtor,” and reads them as if they were “ that which remains the property of the debtor, so far as creditors are concerned.” It assumes that the property sought to he seized was the debtor’s, and being so, the assignment formed no barrier to its possession by creditors, and that the sheriff represents the creditor, who, until his debt was established, could not reach such property by a principle analogous to that by which a court of equity removes obstructions to the operation of an execution. But it has already been shown that such a principle is entirely different from that by which courts of equity reach the proceeds of property fraudulently assigned ; that the money lent was not the debtor’s ; and that the debt claimed was not due to him. The dissenting opinion in that case, held the sheriff could bring no such suit, because, (1.) He had no interest in the subject matter of the action to entitle him to be plaintiff therein. (2.) He was not trustee of an express trust. (3.) Under section 232 of the Code, the debt attached did not belong to the judgment debtor, but to the assignees ; and (4) No such right could be exercised until the assignment had judicially been declared void, which could not he done until judgment, which had not been obtained. Such opinion relied upon the previous decision of a general term of the same court that a depositary or borrower of moneys belonging to assignees, however fraudulent, could not file a hill of interpleader between such assignees and creditors. It seems difficult to reconcile the two decisions, and loth as I am to differ with a co-ordinate tribunal of equal jurisdiction, upon *158 a question of such importance, I cannot help subscribing to the superior cogency of the reasoning in the dissenting opinion in that case, (a) Considering that the court overlooked the fact that the money lent never was the debtor’s, so that by no legal feature could a liability to return it by a borrower be said to be a debt to him, or any part of his effects, I must, however reluctantly, follow what appears to me the plain language of the statute.
I am, therefore, in favor of setting aside the verdict and judgment, with costs to abide the event.

Since the delivery of the foregoing, the doctrine contained in such dissenting opinion has been reiterated by the same learned justice, in another case, and announced by him as the doctrine of the court whose bench he adorns.