FELIX V. B. KENNEDY, *as Receiver, &c., v.* GOULD H. THORP *and* WATERMAN C. BRADLEY.

It is not essential to state, in an affidavit to obtain an order for the examination of a judgment debtor, in supplementary proceedings upon a judgment in a court of record, that the judgment has been docketed in the county clerk's office. It is otherwise where the proceedings are founded upon a judgment obtained in a District Court of the city of New York.

A receiver of the property of a judgment debtor, appointed in supplementary proceedings, is not estopped from proving that the debt for which the judgment was obtained was fraudulently incurred, by the fact that the judgment creditor waived the fraud by bringing an action for the debt.

Fraudulent representations of solvency, by which one induces credit to be given him just before making a general assignment, are evidence to indicate a general scheme of fraud, of which the assignment was a part.

APPEAL by the defendants from a judgment at trial term.

The action was brought by the plaintiff, as receiver of the goods and property of Waterman C. Bradley, to set aside a general assignment, as having been made with the intent to hinder, delay, and defraud creditors. The plaintiff was appointed receiver, in proceedings supplementary to execution issued upon a judgment, which was recovered against Bradley at the suit of the Glen Cove Starch Manufacturing Company.

Upon the trial, the regularity of the plaintiff's appointment was raised, it being objected, among other things, that the affidavit upon which the order for the judgment debtor's examination in the supplementary proceedings, in which plaintiff was appointed, did not show that the judgment of the Glen Cove Starch Manufacturing Company was ever docketed in the county clerk's office.

The court (CARDOZO, J.) rendered judgment for the plaintiff, delivering the following opinion:

CARDOZO, J. 1. I am of the opinion that there is nothing upon the face of the assignment which invalidates it.

2. The objection that the complaint does not show that the remedy at law has been exhausted, because it is not averred that the judgment was docketed in the county clerk's office, might have been good upon demurrer; but as the defendants have seen fit to go to trial, and their own proof shows that the assignor had not any real estate, I think the pleadings should, under the Code, be conformed to the fact, by an allegation excusing the omission to docket the judgment in the county clerk's office, similar to the one suggested by the Chancellor, in *Ontario Bank* v. *Schermerhorn* (10 Paige, 109), which, I think, would be sufficient to sustain the bill.

3. Upon careful reflection, I am constrained to find, as a matter of fact, upon all the evidence, that the assignment is fraudulent; that the purchases were made upon false representations, and with intent to dispose of the property for the assignor's own benefit; and that the assignment was made in pursuance, or execution, of such intent. I think all the evidence received is competent, as bearing upon the intent with which the assignment was made.

4. There must be judgment for the plaintiff, and the assignee must account and pay over to the plaintiff, who will be authorized to pay the creditors whom he represents. A reference will be ordered to carry the judgment into effect.

From this judgment the defendants appealed.

*D. M. Porter*, for appellants.

*William H. Dickinson*, for respondent.

By the Court.—Brady, J.—It was not necessary to state in the affidavit that a transcript of the judgment had been filed in the office of the county clerk. The judgment of which the supplementary proceedings were predicated had been obtained in this court. The Code (§ 292) does not make that a prerequisite in such a case. When the proceedings are founded upon a judgment obtained in a district court in this city, it is essential to jurisdiction (Code, § 68). The cases upon this question, cited by the defendants' counsel, related to judgments in justices'

courts which affected only the personal property of the debtor, *ex proprio vigore*, and the judgments pronounced were based upon that distinction. Were it otherwise, it is shown that the debtor had no real estate, and the amendment allowed by Judge Cardozo remedied the defect. The Glen Cove Starch Manufacturing Company could have proceeded against the defendant Bradley, to recover the goods in specie, or their value, in an action founded upon the fraud alleged to have been committed, or they could waive the tort, affirm the sale, and sue as for goods sold and delivered. It is conceded that their judgment was recovered upon an alleged sale and delivery of the goods, and the right to proceed, as for a tort, was waived and merged. Although such was the legal result of the form of action adopted by them, it did not prevent them from assailing the assignment, on the ground that it was made with intent to defraud creditors. The gravamen of the two causes are entirely different. The fraudulent representations by which they were induced to sell their goods were proved for the purpose of showing an intent to accumulate property for a fraudulent purpose, in conjunction with similar transactions, but not by them as suitors, but by the receiver, who represents the interest of the creditors as well as those of the debtor, and who is a trustee for all parties (*Bostwick* v. *Beizer*, 10 Abbott Pr. 197; *Porter* v. *Williams*, 9 N. Y. 142; *The Chautauque County Bank* v. *White*, 6 N. Y. 236). This action cannot be regarded as commenced by the Glen Cove Starch Manufacturing Company. The receiver takes the property of the debtor if the assignment cannot be sustained, inasmuch as the assignee has no title to it or its proceeds. The fraudulent conveyance, in such an action as this, may be annulled, and the creditor permitted to proceed to a sale upon his execution, or the property sold, and the proceeds applied to the payment of debts, according to their legal or equitable priorities (cases, supra). It was the duty of the receiver, if the facts and circumstances warranted it, to essay to get the assets of the debtor, by attaching an assignment which he believed was fraudulently made to hinder and delay the creditors in the collection of their debts. The plaintiff is, therefore, *rectus in curia*. There is no doubt that the assignor,

Bradley, made purchases when he was insolvent. He had a right to do so. It was not evidence *per se* of a fraudulent intent, though it was a fact to be considered with reference to the general design which he had in view. His false representations, however, were wholly unjustifiable, having been addressed on the subject to which they related (*Nichols* v. *Pinner*, 18 N. Y. 295; *S. C.* 23 N. Y. 264). It may also be said that he had a right to make an assignment preferring creditors, but, nevertheless, the exercise of both rights may have been with the intent to defraud. An act lawful in itself may be done with a fraudulent intent, and the facts and circumstances surrounding the defendant militate much against his honesty. He not only purchased largely within a short time before he made an assignment, but obtained many of the goods bought on representations as to his solvency which were false. The greater part of the goods thus obtained were shipped, and the creditor prevented, therefore, from reclaiming them. His purchases, within six weeks prior to the assignment, were more than enough to pay his confidential debts, but so little in excess as to justify the conclusion that his scheme was to get goods enough to protect that class of creditors, and then to assign. His explanation of the causes of his failure, I admit, was plausible. He lost by stock operations, and by the failure of his brokers, whose notes he had to take for the margin deposited with them, and his credit was seriously injured by the conduct of some of his creditors, who, by offering his paper at large discounts, depreciated his ability to meet his engagements. These causes precipitated, he says, the assignment, which he had not designed to make until almost immediately before it was executed. It appears, however, that his stock operations were based upon money which was not part of his capital, and that he had made gains, though not sufficient to cover the losses and margins withheld. These explanations, however, are not sufficient to remove the effect of his extraordinary conduct in making the purchases he did by false statements. I should be much disposed to regard his assignment as honestly executed, were it not for this element. It was that, indeed, which justified his creditors in assailing his credit, and, when it was assailed, he could not defend it. It is

true that he says he did not know that he was not solvent, but that cannot avail him. When inquired of on that subject, in reference to a purchase on credit, he was bound to know it. If a man may be excused, by a supposition or belief that what he says is true, under such circumstances, with all the means of knowledge at hand, and particularly when it relates to his own personal affairs, then the remedies for fraud accomplished would be valueless, and commercial transactions rendered very insecure in their results. The law does not, however, countenance such conduct. Whether a party misrepresenting a material fact, knows it to be false, or makes the assertion without knowing whether it be true or false, is wholly immaterial; for the affirmation of what one does not know or believe to be true is equally, in morals and in law, as unjustifiable as the affirmation of what is known to be positively false (1 Story Eq. § 193). This proposition was adopted by the Court of Appeals in *Bennett* v. *Judson* (21 N. Y. 238). The defendant, Bradley, fraudulently obtained goods with the intention of transferring them, or their proceeds, for the purpose of securing a certain class of creditors, to the exclusion of others, and the two things formed one general design. If he had returned to the sellers, from whom his recent purchases were made, their goods, or some portion of the proceeds, his conduct would have secured a more favorable consideration, and an honest intent, in assigning the rest of his assets, might have been gathered from all the circumstances then disclosed. I do not arrive at this conclusion entirely free from doubt, but I should entertain greater doubt of the propriety of upholding the assignment.

I think the judgment should be affirmed.

Judgment affirmed.