GEORGE K. PRESTON *v.* E. L. MOORE.*

(*Knoxville.* September Term, 1915.)

1. **TRUSTS. Constructive trusts. Misappropriation of property.**
Where defendant, a salesman employed in complainant's mercantile establishment, appropriated to his own use merchandise and money belonging to complainant, and purchased and improved real property therewith, complainant was entitled to look to such real property as being held under a constructive trust, the absence of the conventional relation of trustee and *cestui que trust* being no obstacle to the granting of equitable relief, and the facts showing, if such showing was necessary, that full trust and confidence and ample power over the receipt and handling of funds and merchandise were given defendant by complainant. (*Post, pp.* 249-255.)

Cases cited and approved: Union Bank v. Baker, 27 Tenn., 447; Edwards v. Culberson, 111 N. C., 342; Pascoag Bank v. Hunt, 3 Edw. Ch., 583; Bank of America v. Pollock, 4 Edw. Ch., 215.

Cases cited and distinguished: Campbell v. Drake, 39 N. C., 94; Newton v. Porter, 69 N. Y., 133; Riehl v. Evansville Foundry Association, 104 Ind., 70.

2. **HOMESTEAD. Exception from exemption. Constructive trusts. Misappropriation of property.**
A person, who, by reason of the misappropriation of another's property and investment thereof in real estate, was a trustee *ex maleficio* for the person whose property was appropriated, was not entitled to a homestead in such real estate as against the *cestui que trust.* (*Post, pp.* 255, 256.)

Case cited and approved: Gordon v. English, 71 Tenn., 634.

---

FROM KNOX.

---

*On existence of trust in property stolen or embezzled see note in L. R. A., 1914B, 442.

APPEAL from the Chancery Court of Knox County. —R. H. SANSOM, Special Chancellor.

A. C. GRIMM, for appellant.

FOWLER & FOWLER, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

In this cause the special chancellor decreed that Moore, while in the employ of complainant Preston as a salesman in the mercantile establishment of the latter, in violation of the trust and confidence reposed in him and in disregard of his duties as such employee, wrongfully and without knowledge or consent of complainant appropriated to his own use merchandise and money belonging to complainant to the value of $1715.-56; and that out of same defendant purchahed a certain lot and improved it by erecting thereon a dwelling house, barn, etc. In this finding we concur, after an examination of the record. We hold that the realty was purchased and improved by the use of funds thus appropriated.

The complainant, thus having traced or followed the fund wrongfully diverted into the real estate, contended below, and insists here, that he is entitled to have the realty subjected to the satisfaction of his demand, as representing, under the doctrine of resulting trusts or of constructive trusts in the nature of a resulting trust, the funds of complainant which produced the same.

Preston v. Moore.

The lower court held that defendant Moore was entitled to a homestead in the realty so acquired, and complainant assigns that ruling as error.

The first question, therefore, for solution is whether complainant may be permitted by equity to follow the funds so appropriated into the realty.

The counsel of defendant on this phase of the case contend that a resulting trust cannot arise out of a transaction that is felonious in character. The early case of *Union Bank* v. *Baker,* 8 Humph (27 Tenn.), 447, is relied on. In that case it appeared that a large amount of the notes of the bank had been stolen from its vaults, a considerable portion of which came into the possession of Baker, who at the time knew them to have been stolen, and the effort of the bank was to trace the notes, through an investment in whisky, into realty as the ultimate investment, and the court, in passing on the question, said that a trust could not be created out of such a felony; that it would be a new principle to hold every thief a trustee by construction for the owner of the effects stolen, and to allow the true owner to pursue them in chancery through their changes in form. But the real ruling adverse to the bank in that case was that the trust fund could not be traced into and beyond property perishable in nature, such as whisky. The court placed its *dictum* that a felonious transaction may not be made the basis of a constructive trust on the authority of the case of *Campbell* v. *Drake,* 39 N. C. (4 Ired. Eq.), 94, where it was held that when a clerk in a store pilfered money and

goods from his employers, and laid out the proceeds in the purchase of a tract of land, the person thus wronged could not hold the clerk as trustee for his benefit. It should be noted, however, that the supreme court of North Carolina, in *Edwards* v. *Culberson,* 111 N. C. 342, 16 S. E., 233, 18 L. R. A., 204, examined the case of *Campbell* v. *Drake,* and demonstrated clearly that the modern rule is not in accord with what was thus said in the earlier case. Seizing on a passing remark of the judge who delivered the opinion in *Campbell* v. *Drake* to the effect that the complainant might "have the land declared liable as a security for the money laid out for it," Chief Justice SHEPHERD in the later case said:

"It was not stated upon what principle this could be done, but we apprehend that it was based upon the general proposition that whenever a person has obtained the property of another by fraud, he is a trustee *ex maleficio* for the person so defrauded for the purpose of recompense or indemnity. 'One of the most common cases,' remarks Judge STORY, 'in which a court of equity acts upon the ground of implied trusts, *in invitum,* is when a party receives money which he cannot conscientiously withhold from another party.' Story, Eq. Jur., sec. 1255."

The North Carolina court then proceeded to hold what on this record we are not called on by the facts of this case to rule:

"A confidential relation is not necessary to establish such trust, and there is no good reason why the owner

Preston v. Moore.

of property taken and converted by one who has no right to its possession should be less favorably situated in a court of equity, in respect to his remedy (at least for the purpose of 'recompense or indemnity'), than one who by an abuse of trust has been injured by the wrongful act of a trustee to whom the possession of trust property has been confided. . . . The trusts of which we are speaking are not what is known as 'technical trusts' and the ground of relief in such cases is, strictly speaking, fraud, and not trust. Equity declares the trust in order that it may lay its hand upon the thing and wrest it from the possession of the wrongdoer. This principle is distinctly recognized by our leading text-writers, and it is said by Mr. Bispham (Eq. 92) that 'equity makes use of the machinery of a trust for the purpose of affording redress in cases of fraud.' The principles above stated are illustrated by many decisions to be found in the reports of other states, and as our case may easily be assimilated to those in which money or other property has been stolen and converted, such cases must be recognized as pertinent authority in the present investigation.''

The attempt to establish the doctrine thus combated met the same fate in the courts of New York. In *Pascoag Bank* v. *Hunt,* 3 Edw. Ch., 583, it was held that a felon could not by implication be made a trustee, but the authority of the case was almost immediately undermined by *Bank of America* v. *Pollock,* 4 Edw. Ch., 215; and in *Newton* v. *Porter,* 69 N. Y., 133, 25 Am. Rep., 152, it was said:

"It is insisted by counsel for the defendants that the doctrine which subjects property acquired by the fraudulent misuse of trust moneys by a trustee to the influence of the trust, and converts it into trust property and the wrongdoer into a trustee at the election of the beneficiary, has no application to a case where money or property acquired by felony has been converted into other property. There is, it is said, in such cases, no trust relation between the owner of the stolen property and the thief, and the law will not imply one for the purpose of subjecting the avails of the stolen property to the claim of the owner. It would seem to be an anomaly in the law, if the owner who has been deprived of his property by a larceny should be less favorably situated in a court of equity, in respect to his remedy to recover it, or the property into which it had been converted, than one who, by an abuse of trust, has been injured by the wrongful act of a trustee to whom the possession of trust property has been confided. The law in such a case will raise a trust *in invitum* out of the transaction, for the very purpose of subjecting the substituted property to the purpose of indemnity and recompense. . . .

"We are of opinion that the absence of the conventional relation of trustee and *cestui que trust* between the plaintiff and the Warners is no obstacle to giving the plaintiff the benefit of the notes and mortgage, or the proceeds in part of the stolen bonds. See *Bank of America* v. *Pollock*, 4 Edw. Ch., 215."

In a case involving a bookkeeper or salesman who had embezzled funds and invested same in real estate, causing title to be taken in his wife, *Riehl* v. *Evansville, Foundry Association,* 104 Ind., 70, 3 N. E., 633, it was said:

"A bookkeeper or salesman, who receives the money of his employer by virtue of his employment, does receive it in a fiduciary capacity, and if he fraudulently appropriates it to his own use, he is guilty of a breach of trust. The funds which come into the hands of an agent for his principal are trust funds, and the latter, as the beneficiary, becomes in equity the owner of the property purchased by the agent with these funds. Where one occupies the position of a trustee, either by express appointment or by implication of law, and wrongfully uses the money received by him as trustee in the purchase of property, the beneficiary may follow it into the property. . . .

"Cases are cited holding that where an agent embezzles money from his employer and invests it in property, the principal cannot follow the trust into the property, because the remedy against the agent is by a criminal prosecution. *Campbell* v. *Drake,* 4 Ired. Eq. (39 N. C.), 94; *Pascoag Bank* v. *Hunt,* 3 Edw. Ch., 583.

"We have no doubt that these cases were not well decided. They are in conflict with the very great weight of authority, and are unsound in principle. The fact that the agent may be criminally prosecuted does not affect the right of the principal to get back his

money. With quite as much reason might it be urged that the principal could not take from the embezzler the money, if found on his person, because he can be punished by a criminal prosecution, as to urge that the principal cannot follow the trust because the embezzler is liable to be punished by a prosecution at the instance of the state. There is no conceivable reason why the wronged employer may not secure his money and the embezzler be also punished. The punishment is not to vindiate or reward the principal but to protect the community from the criminal acts of embezzlers."

In Perry on Trusts, sec. 217, of the later New York rule, it is said:

"This would seem to be the better opinion, as the clerk certainly holds a confidential relation to his employer.

"In *Newton* v. *Porter*, it was held that the owners of the proceeds of stolen property might be charged as trustees for the owner, and there would seem to be no principle to the contrary. It may depend, however, upon the extent to which the clerk is trusted."

See, also, Pom. Eq. Jur., 1053; 1 Beach, Mod. Eq. Jur., sec. 281.

If the limitation suggested in the last quotation were accepted as sound, then under the facts of this case we would be compelled to hold that full trust and confidence and ample power over the receipt and handling of funds and merchandise were given Moore by his employer, to whose trust he proved recreant.

We therefore hold that the complainant may look to the property which was the product of the peculations for indemnity, as being held under a constructive trust. The absence of the conventional relation of trustee and *cestui que* between the parties is no obstacle to the granting of equitable relief.

May a trustee *ex maleficio* prevail upon a claim to right of homestead in the realty produced by the avails of his fraud on the *cestui que trust,* against the latter, when the fund is followed into the realty?

An affirmative response would shock one's sense of what is equitable, and it is not the response the law gives.

Thompson in his work on Homestead, sec. 338, says:

"If B. has purchased a homestead with the money of A., under such circumstances as would make him a resulting trustee for A., of course he can assert no right to homestead as against A., since in the eye of a court of equity, A. is the owner of the property, and not B."

This court in *Gordon* v. *English,* 3 Lea (71 Tenn.), 634, referred to the text of Mr. Thompson with approval, and held that not only in cases of resulting trust proper, but also in a case which involved "a trust which has all the qualities and effects of a resulting trust proper" was the rule applicable. The wrongdoer, it was there said, "cannot acquire a homestead right as against the person whose money has been used. The money due the beneficiary is in reality purchase

money, against which the homestead exemption cannot prevail.''

The learned special chancellor erred in decreeing to the contrary on the last points. Modified and affirmed, with remand for further proceedings consistent with what is herein ruled.